No. 01-838

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 174

KRISTINE E. LIERBOE, Individually and
on behalf of all others similarly situated,

        Plaintiff,

    v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.,

        Defendant.

ORIGINAL PROCEEDING:  Certified Question
                             United States District Court, District of Montana, Missoula Division
                             Hon. Donald W. Molloy, United States District Court

COUNSEL OF RECORD:

        For Plaintiff:

                Alan J. Lerner; Lerner & Danno, Kalispell, Montana

                Jeffrey D. Ellingson; Ellingson Law Offices, Kalispell, Montana

                Dale L. McGarvey, Allan M. McGarvey, Roger Sullivan; McGarvey,
                Heberling, Sullivan & McGarvey, Kalispell, Montana

        For Defendant:

                Bradley J. Luck; Garlington, Lohn & Robinson, Missoula, Montana

        For Amicus Curiae:

                Randall G. Nelson; Nelson Law Firm, Billings, Montana (for Montana
                Defense Trial Lawyers Association)

                      Argued:  September 26, 2002
                  Submitted:  October 24, 2002
                    Decided:  July 1, 2003

Filed:

_____

Clerk

District Court Judge Gregory R. Todd, sitting for former Justice Terry N. Trieweiler, delivered the Opinion of the Court.

¶1 Pursuant to Rule 44(c) of the Montana Rules of Appellate Procedure, Chief Judge Donald W. Molloy of the United States District Court for the District of Montana, Missoula Division, certified two questions to this Court. The two questions from the United States District Court are:

¶2 1. Is a shareholder or relative of a shareholder of a closely-held corporation covered by an automobile liability policy issued to the closely-held corporation when the terms of the policy include coverage reference to "relatives"?

¶3 2. Given the facts of this case, if Kristine Lierboe is covered under the Shining Mountain Design and Construction, Inc., policy, does the anti-stacking holding in *Ruckdaschel* apply under the terms of these policies?

¶4 For the reasons discussed below, we will not address the first issue and find the second issue dispositive. We hold that, given the facts of this case, Kristine Lierboe is not covered under the Shining Mountain policy. Since this is a coverage case and not a stacking case, *Ruckdaschel* does not apply under the terms of the policies.

FACTUAL BACKGROUND

¶5 The United States District Court submitted the following facts as agreed upon by the parties: Plaintiff Lierboe is a resident of Kalispell, Flathead County, Montana. All class members were Montana insureds to whom insurance policies were issued in Montana. The collision that resulted in injuries to Lierboe occurred in Montana.

2

¶6    Defendant State Farm Mutual Automobile Insurance Company (State Farm) is a corporation existing under the laws of a state other than Montana and has its principal place of business in a state other than Montana. State Farm is authorized to transact business in Montana, and regularly transacts business in Montana. The acts and omissions that give rise to this case occurred in Montana. The insurance policies that gave rise to this action were issued to Lierboe and class members as Montana insureds.

¶7    On or about September 5, 1996, Lierboe suffered physical injury as a result of an automobile collision. The vehicle Lierboe was driving at the time of the accident, a 1986 Jeep Cherokee, was insured by State Farm (policy number 107 0721-D12-26D). The named insureds on the policy were Hal C. Trost and Kristine Lierboe of Whitefish, Montana. The policy provided medical payment coverage (MPC) with limits of $5,000.

¶8    Lierboe had an interest in a corporation, Shining Mountain Design and Construction (Shining Mountain), on the date of the accident. Shining Mountain had two automobile insurance policies issued by State Farm. Policy number 107 2821-C01-26G covered a 1991 Dodge Dakota pickup truck; this particular policy had MPC with limits of $5,000. Policy number 108 0457-E25-26H covered a 1970 IHC flatbed truck; this particular policy did not have MPC.

¶9    On September 16, 1996, State Farm wrote Lierboe and acknowledged her claim for MPC as a result of the accident. State Farm advised Lierboe that her MPC limit was $5,000. Lierboe submitted medical bills in excess of $5,000. On June 2, 1997, State Farm advised Lierboe that she had reached her medical payment policy limits.

3

¶10     On November 13, 1997, the Montana Supreme Court decided *Ruckdaschel v. State Farm Mut. Auto Ins. Co.* (1997), 285 Mont. 395, 948 P.2d 700.  The State Farm automobile policy at issue in this case provides MPC benefits to a person entitled coverage for reasonable medical expenses that are necessary as a result of a covered accident.  The benefits are available for expenses incurred within three years of an accident.  State Farm did not notify Lierboe that she was entitled to additional medical payment benefits after June 2, 1997.  State Farm did not pay any additional medical benefits to Lierboe after June 2, 1997.

¶11     On March 18, 1999, the Office of the State Auditor and Commissioner of Insurance for the State of Montana sent a letter to State Farm.  The letter alerted State Farm to the application of the *Ruckdaschel* ruling to other Montana insureds.  Following the decision in *Ruckdaschel*, State Farm considered the application of the holding to pending claims.

GIVEN THE FACTS OF THIS CASE, IF KRISTINE LIERBOE IS COVERED UNDER THE SHINING MOUNTAIN DESIGN AND CONSTRUCTION, INC., POLICY, DOES THE ANTI-STACKING HOLDING IN *RUCKDASCHEL* APPLY UNDER THE TERMS OF THESE POLICIES?

¶12     In this case, Lierboe argues that she can stack the personal MPC coverage of the Jeep she was driving with the Shining Mountain MPC coverage of the Dodge which was not involved in the accident.  The unambiguous language of the Dodge policy excludes coverage for Lierboe's accident in the Jeep.  At the end of the Dodge MPC section, under the heading "What Is Not  Covered," the policy states:

> THERE IS NO COVERAGE:
> . . . .
> 4.  FOR MEDICAL EXPENSES FOR *BODILY INJURY*:

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED OR LEASED BY *YOU* OR ANY *RELATIVE*, WHICH IS NOT INSURED UNDER THIS COVERAGE[.]

¶13 The No Coverage Provision of the Dodge policy is clear and unambiguous. Lierboe is claiming medical expenses from the Dodge MPC policy that she sustained while she was occupying a vehicle (her 1986 Jeep) owned by her. Lierboe argues that an interpretation of the Dodge policy exclusion excluding MPC would violate her reasonable expectations. But "[e]xpectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.' " *Stutzman v. Safeco Insurance Co. of America* (1997), 284 Mont. 372, 381, 945 P.2d 32, 37 (quoting *Wellcome v. Home Ins. Co.* (1993), 257 Mont. 354, 359, 849 P.2d 190, 194).

¶14 The Jeep policy clearly and unambiguously states in its MPC section that only insureds get MPC under the policy covering the Jeep: "These *persons* [for whom medical expenses are payable] have to sustain the *bodily injury*: a. while they operate or *occupy* a vehicle covered under the liability section[.]" Medical payment coverage follows only the listed vehicle and not other vehicles.

¶15 Lierboe also argues that the No Coverage provision of the Shining Mountain Dodge MPC is ambiguous when it states there is no coverage for injury sustained while occupying an owned vehicle "not insured under this coverage." When the provision states that there is no coverage for injuries sustained while occupying an owned vehicle not insured under "this coverage," the phrase "this coverage" refers only to the Dodge policy. Therefore, there is "no

5

coverage" for injuries sustained while occupying any owned vehicle other than the Dodge. The word "this" does not mean "other." "This" means "this."

¶16    Other jurisdictions that have examined identical "no coverage" provisions from State Farm policies have held that such a limitation to vehicles insured under "this coverage" unambiguously excludes coverage for injuries sustained while occupying owned vehicles insured under other coverages. In a case very similar to this case, the New Mexico Supreme Court rejected an insured's argument for stacking MPC:

> The relevant portions of the policy, *supra*, clearly indicate that medical coverage is for the vehicle described in the policy only and, therefore, unambiguously rejects stacking. . . .
>
> The policies state that State Farm will pay medical expenses to certain enumerated parties while they operate a vehicle covered under the liability section. The liability section obligates the insurer to pay for loss resulting from the use of "your car," which is defined as the one car owned by Sanchez [insured] that the policy covers. The policy further excludes injury sustained while occupying any vehicle owned by Sanchez that is not insured by the coverage of the policy.

*Sanchez v. Herrera* (N.M. 1989), 783 P.2d 465, 470. The Missouri Supreme Court held that a no coverage provision identical to the case at bar "clearly expresses the intention to limit coverage to injuries caused by the insured vehicle or vehicles." *Hempen v. State Farm Mut. Auto Ins. Co.* (Mo. 1985), 687 S.W.2d 894, 895.

¶17    In 1997, this Court decided *Ruckdaschel*. Ruckdaschel was injured when she was struck as a pedestrian by a car driven by a State Farm insured. The "anti-stacking" language of the State Farm policy in *Ruckdaschel* was held to be unenforceable as a violation of Montana's public policy. *Ruckdaschel*, 285 Mont. at 399, 948 P.2d at 703.

6

¶18    In *Ruckdaschel*, each State Farm policy contained language that said State Farm would cover expenses for bodily injury sustained "through being struck as a pedestrian by a motor vehicle or trailer." *Ruckdaschel*, 285 Mont. at 397, 948 P.2d at 701. Only the operation of the anti-stacking clauses contained in each policy, which the Court held unenforceable, prevented Ruckdaschel from recovering under multiple policies. *Ruckdaschel*, 285 Mont. at 399, 948 P.2d at 702. *Ruckdaschel* does not apply in this case because Lierboe's accident in her Jeep was covered by only a single policy. Therefore, there was no second covering policy to stack. No stacking issue exists unless there are multiple policies which actually cover the accident in question.

¶19    Lierboe's argument in this case is based on a fundamental misconception of both *Ruckdaschel* and the insurance policies at issue. *Ruckdaschel* invalidated anti-stacking provisions and held that when two or more MPC coverages apply to a given accident, the insured may recover up to the limit of both. In this case, Lierboe's accident in her Jeep was, for reasons entirely unrelated to any anti-stacking language, only covered by the Jeep policy and was not covered by the Shining Mountain Dodge policy. As Lierboe's accident was covered only by a single policy, there is no second policy to stack. Therefore, the anti-stacking provision never comes into play, and the *Ruckdaschel* decision does not apply.

¶20    The distinction between named insureds and those who qualify as insureds only by virtue of their occupancy in the vehicle was pointed out in our decision in *Chilberg v. Rose* (1995), 273 Mont. 414, 903 P.2d 1377. The plaintiff in *Chilberg* was injured as a passenger in a car owned by Jay Dean and insured by Mid-Century Insurance Company. Dean had three

cars insured under separate policies through Mid-Century at the time of the accident. The plaintiff attempted to stack the MPC and uninsured motorist benefits of all three policies. *Chilberg*, 273 Mont. at 415, 903 P.2d at 1378.

¶21  The *Chilberg* Court held that stacking coverages in that case was not appropriate because the plaintiff "[did] not qualify as an insured under the two disputed policies because he was not occupying the cars insured under the two disputed policies." *Chilberg*, 273 Mont. at 417, 903 P.2d at 1379. Permitting Chilberg to stack policies did not further the public policy rationale in *Bennett v. State Farm Mut. Auto. Ins. Co.* (1993), 261 Mont. 386, 862 P.2d 1146. The *Chilberg* Court went on to state "Chilberg was a passenger who neither had 'reasonable expectations' of coverage under the policy nor did he qualify as an insured spouse or family member under more than one policy." *Chilberg*, 273 Mont. at 418, 903 P.2d at 1380.

¶22  The distinction between *Ruckdaschel* and *Chilberg* is clear. In *Ruckdaschel*, the accident of the insured was covered by multiple policies and, once the anti-stacking clause was struck down, the insured was entitled to stack the policy limits. In *Chilberg*, as in this case, coverage was excluded under the second policy because the plaintiff did not occupy the vehicle covered by that policy. Lierboe in this case did not have reasonable expectations of coverage under the Shining Mountain policy as she did not qualify as an insured under more than one MPC policy. Therefore, there was no stacking issue. This case involves only a coverage issue.

¶23  Based upon the foregoing analysis, we answer that Kristine Lierboe is not covered under the Shining Mountain and Design Construction, Inc., policy. Therefore, the anti-stacking holding in *Ruckdaschel* does not apply under the terms of these policies.

8

/S/ GREGORY R. TODD
District Court Judge Gregory R. Todd, sitting for former Justice Terry N. Trieweiler

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE

9

Justice Jim Regnier dissenting.

¶24 The Court has declined to answer Judge Molloy's first certified question for the reason that it finds the second certified question dispositive. I respectfully dissent from the majority's holding on the second certified question and from its resulting refusal to address the first certified question.

¶25 The majority concludes that the clear, unambiguous language of the "no coverage" provision precludes Lierboe from recovering under both policies. The Court states:

> *Ruckdaschel* does not apply in this case because Lierboe's accident in her Jeep was covered by only a single policy. Therefore, there was no second covering policy to stack. No stacking issue exists unless there are multiple policies which actually cover the accident in question.

*Lierboe*, ¶ 18. I believe the ambiguity argument is a red herring which has distracted the majority from a more fundamental consideration, i.e., the majority subscribed to the provision's preclusive effect without addressing the permissibility of the prohibition. After all, clarity itself cannot resurrect an otherwise impermissible insurance provision. Therefore, in my estimation, the appropriate inquiry is whether the "no coverage" provision constitutes an anti-stacking provision, rendering it void as against public policy pursuant to *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892, and its predecessors.

¶26 The concept of stacking "arises where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded." 12 Couch on Insurance 3d, § 169:4 (1998). Thus, we must first determine the coverage issue per Judge Molloy's first certified question. If Lierboe does not constitute an insured under the

10

Shining Mountain policy, we need not address the validity of her medical pay claim and corresponding stacking issue.

¶27    The stipulated facts indicate that Shining Mountain is a closely held corporation in which Lierboe owns an interest. Obviously, corporations are "persons" only to the extent as defined by statute. Yet, the policy issued by State Farm references "relatives," "person," "medical and funeral expenses," and "bodily injury." It goes without saying that corporations do not suffer bodily injuries, incur medical expenses, or maintain "relatives." Thus, if the policy did not intend to extend coverage to shareholders, principals, and other affiliated individuals, why did State Farm include the personifying terms in a corporate policy?

¶28    Section 33-15-337, MCA, requires that casualty policies utilize simple, clear, and understandable language. Similarly, this Court has consistently construed ambiguous policy provisions against the policy's drafter, the insurer, and in favor of coverage. *Wellcome*, 257 Mont. at 356, 849 P.2d at 192. Finally, the determination of coverage often hinges on the reasonable expectation of the person purchasing the policy–what is objectively reasonable to the average person controls. *See St. Paul Fire and Marine Ins. Co. v. Thompson* (1967), 150 Mont. 182, 187, 433 P.2d 795, 798; *Leibrand v. Nat. Farmers Union* (1995), 272 Mont. 1, 898 P.2d 1220.

¶29    With these principles in mind, the word "relatives" must apply to individuals closely associated with the insured corporation. Such an interpretation must prevail to accord meaning to the policy. As stated above, a corporate entity cannot suffer "bodily injury" or incur "medical or funeral" expenses. Is it then patently unreasonable for an average person to expect

11

personal protections from a corporate policy which uses the above terminology when the individual pays the corresponding premiums? I think not.

¶30 I agree with the late United States District Court Judge Paul Hatfield's determination on the issue in *Hager v. American West Ins. Co.* (D.Mont. 1989), 732 F.Supp. 1072. *Hager* involved an uninsured motorist claim with respect to a shareholder of a closely held corporation. The shareholder, a pedestrian, was struck by a hit and run driver in a parking lot. Judge Hatfield concluded that closely held corporations had clearly identifiable officers and shareholders and when corporate insurance policies include language such as "family member," it is only reasonable to conclude that the readily identifiable officers and shareholders fall within the purview of that terminology. *Hager*, 732 F.Supp. at 1075. Judge Hatfield further concluded that the use of "family member" in a closely held family corporation policy created an ambiguity. "A construction of the term based upon the conclusion that a corporation cannot have 'family members' in the literal sense, would directly contravene the mandate of Montana law requiring the ambiguity to be construed against the defendant." *Hager*, 732 F.Supp. at 1075. Likewise, when State Farm utilized similar terms in its policy, it, at the very least, created an ambiguity which we must construe in favor of Lierboe and against State Farm. Accordingly, I conclude that Lierboe was an insured under the Shining Mountain policy.

¶31 Since Lierboe was covered under multiple policies, we must examine the purported exclusivity effect of the "no coverage" provision. Admittedly, the provision at issue contains different language and contemplates a scenario somewhat unlike the traditional uninsured and

12

underinsured anti-stacking analyses. Yet, the provision operates against insureds in virtually the same manner. Without the provision, we have one claimant covered for the same loss, medical expenses derived from bodily injury, under two separate policies for which State Farm received independent premiums. Despite the provision's slightly unique language, the majority's characterization of the provision as a "coverage" provision versus a "stacking" provision, and the purportedly significant distinction between *Ruckdaschel* and *Chilberg* (a distinction simply grounded in semantics), the "no coverage" provision's implications compel one conclusion–it is an anti-stacking provision.

¶32     In fact, the authority cited in support of the majority's conclusion acknowledges this reality–the above provision "unambiguously rejects stacking." *Sanchez*, 783 P.2d at 470. Furthermore, numerous other jurisdictions treat virtually the same "no coverage" provision as an anti-stacking provision. *See Miletello v. State Farm* (La. Ct. App. 1990), 566 So.2d 676, 679; *State Farm Mut. Auto. Ins. Co. v. Scitzs* (Miss. 1981), 394 So.2d 1371, 1374; *Hempen v. State Farm Mut. Auto. Ins. Co.* (Mo. 1985), 687 S.W.2d 894, 895; *Keiper v. State Farm Mut. Auto. Ins. Co.* (W. Va. 1993), 429 S.E.2d 66, 70.

¶33     Admittedly, these other jurisdictions reach the same result as that propounded by the majority. However, the fact that these jurisdictions prohibited the attempted stacking maintains no relevance to this case. For, once we establish that the "no coverage" provision is an anti-stacking provision, we must look to Montana law for guidance. If the applicable state law sanctions the use of anti-stacking provisions, the majority's determination garners additional support. Such is not the case here.

¶34    In *Bennett*, 261 Mont. at 389, 862 P.2d at 1148, we concluded that a provision which defeats coverage for which valuable consideration has been received violates Montana public policy. We have embraced this principle for the past twenty-five years and, yet again, recently reaffirmed its continued viability. *See Hardy*, ¶ 42 ("[A]n anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy."). Significantly, *Hardy* drew no distinction between uninsured/underinsured anti-stacking provisions and the one contemplated herein. *Hardy* simply declared any anti-stacking provision that precludes coverage for which an insurer received valuable consideration void as against public policy. Therefore, *Hardy* and its predecessors, without equivocation, render the "no coverage" provision void.

¶35    The majority attempts to distinguish our prior precedent on this issue. It claims that *Bennett* and *Ruckdaschel* do not apply because, there, the insured was covered by multiple policies and once the anti-stacking clause was struck down, the insured was entitled to stack the policy limits. Conversely, the majority contends that the "no coverage" provision at bar precludes coverage if the accident occurred in an owned vehicle not insured under the policy in question. With all due respect, I fail to see the distinction.

¶36    Medical pay coverage is triggered upon realization of the operative event, sustained bodily injury. The coverage contemplates bodily injury irrespective of vehicular occupancy. *See* 12 Couch on Insurance 3d, § 169:103 (1998) ("Medical payments insurance is a 'non-fault' type of insurance, to the extent that it is not dependent on the car in use at the time of the

14

accident; it is not attributable to a specific automobile."). Therefore, the "no coverage" provision directly contravenes the fundamental intent of medical pay coverage.

¶37 In my estimation, this is simply another clever attempt by the insurance industry to assess premiums for unattainable coverage. In the final analysis, I see no difference between this and what we declared against public policy for the past twenty-five years.

¶38 Since Lierboe constitutes an insured under both of the applicable policies, and since the "no coverage" provision is void as a matter of public policy, Lierboe should be entitled to recover her respective medical expenses under each policy. I would answer both of Judge Molloy's certified questions in the affirmative and respectfully dissent from the majority's failure to do so.

/S/ JIM REGNIER


Justice James C. Nelson joins in the foregoing dissent.

/S/ JAMES C. NELSON