Thomas P. O'DRISCOLL, Plaintiff/Appellant,

v.

Azim MUTAPCIC and State Farm Mutual Automobile Insurance Company, Defendants/Respondents.

No. ED 87838.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 7, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2006.

Application for Transfer Denied Jan. 30, 2007.

Gary Alan Growe, Clayton, MO, for Appellant.

Jeffrey Joseph Brinker, Kevin Patrick Etzkorn, co-counsel, Clayton, MO, for Respondent.

Before ROY L. RICHTER, P.J., KATHIANNE KNAUP CRANE, J., and SHERRI B. SULLIVAN, J.

## OPINION

SHERRI B. SULLIVAN, J.

### Introduction

Thomas P. O'Driscoll (Insured) appeals from the trial court's Order and Partial Judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm) in his action seeking underinsured motorist coverage under six insurance policies issued to Insured by State Farm. We affirm.

### Background

Insured brought this action for damages, seeking, inter alia, the recovery of uninsured motorist coverage benefits and underinsured motorist coverage benefits against State Farm, for injuries he sustained on April 27, 2003, when his motorcycle was struck by a motor vehicle driven by Azim Mutapcic (Mutapcic). In Count III of his Amended Petition, Insured alleged that State Farm had issued to him

multiple policies of insurance which included underinsured motorist coverages.

State Farm subsequently filed a Motion for Partial Summary Judgment (Motion), denying that Insured was entitled to "stack" the underinsured motorist coverage provisions of his policies with State Farm. All the policies in effect at the time of Insured's accident included underinsured motor vehicle coverage with limits of $100,000 per person and $300,000 per occurrence, and all included the same provisions regarding underinsured motorist coverage. In its Motion, State Farm argued that the following language of the Insured's policies precluded him from recovering benefits under another policy when he was injured while occupying or operating a vehicle he owned that was insured under a separate policy, even where the policies were all issued by State Farm:

### When Coverages U and W Do Not Apply

\* \* \*

THERE IS NO COVERAGE UNDER COVERAGE W FOR *BODILY INJURY* TO AN INSURED:

2. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED OR LEASED BY *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

In opposition to State Farm's Motion, Insured argued the policies were ambiguous and contained conflicting provisions concerning stacking. Insured contended this ambiguity created a reasonable expectation on his behalf, that stacking of the underinsured motorist coverage would be permitted and urged the trial court to deny the motion.

The trial court issued its Order and Partial Judgment on January 26, 2006. In its Order and Partial Judgment, the trial court, holding that the exclusion was not ambiguous, granted State Farm's Motion and limited Insured's recovery on his claim for underinsured motorist coverage benefits to the policy limits of the policy insuring the motorcycle he was riding when the accident occurred.

Thereafter, on February 15, the parties filed a stipulation with respect to this count of Insured's claim, stating, among other things, that: 1) there existed six policies of insurance issued by State Farm to Insured at the time of the accident; 2) Mutapcic's coverage limits for his vehicle were $100,000 at the time of the accident, and the limits had been paid to Insured; 3) the difference between the amount of Insured's damages for bodily injury and the amount paid by Mutapcic's insurer equaled or exceeded $600,000; and 4) the trial court should enter a judgment in favor of Insured on this count for the sum of $100,000 as the limits of the policy listing Insured's motorcycle, based upon the Order and Partial Summary Judgment. On February 16, the trial court entered judgment in favor of Insured on this count in the sum of $100,000. This appeal follows.

### Point on Appeal

In his single point on appeal, Insured claims the trial court erred in entering judgment only for $100,000, as the limit of the policy listing Insured's motorcycle, on his underinsured motorist claim arising under multiple State Farm policies because the policies did not unambiguously prohibit stacking of the coverages. Insured contends that because the policies are vague, confusing, and ambiguous regarding stacking when read as a whole, they should be construed against State Farm to permit stacking.

### Standard of Review

■ We review the trial court's grant of summary judgment de novo, viewing the

record in the light most favorable to the party against whom judgment was entered. *ITT Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

### Discussion

We very recently considered this precise exclusionary language in an analogous case where an insured also sought underinsured motorist coverage under several insurance policies issued by State Farm. In *Buettner v. State Farm Mut. Auto. Ins. Co.*, 210 S.W.3d 363, 2006 WL 3196845 (2006), a case also published herein and involving very similar facts, we found that the identical exclusion contained clauses which prohibited stacking of the underinsured motorist coverage. Accordingly, our analysis here will borrow liberally from our discussion in that opinion.

■ "Stacking" refers to an injured insured's ability to recover multiple insurance coverage benefits "either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy that covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo.App. E.D.1999).

The existence of underinsured coverage and its ability to be stacked are determined by the terms of the insurance policy; if the policy language unambiguously disallows stacking, courts will not create such extra coverage. *Id.* at 314.

■ Here, the declaration pages of each of the six State Farm policies show that the limit of liability for underinsured motor vehicles is $100,000 per person, and $300,000 per accident. All six policies contain identical clauses defining the limits of liability for underinsured motorist coverage. All six policies were in effect at the time Insured was injured, and Insured made a claim for the underinsured benefits under each of the policies. State Farm, however, denied that Insured was entitled to "stack" the coverages under the policies insuring vehicles not involved in Insured's accident.

In its brief, State Farm argues that the "owned but not insured" clause contained in each of the policies is a valid anti-stacking provision which clearly and unambiguously precludes Insured from recovering under multiple State Farm policies[1]:

**When Coverages U and W Do Not Apply**
THERE IS NO COVERAGE UNDER W FOR *BODILY INJURY* TO AN *INSURED:*

> THERE IS NO COVERAGE UNDER COVERAGE W:
> 1. FOR *BODILY INJURY* TO AN *INSURED:*
> a. WHILE *OCCUPYING* OR OTHERWISE USING A MOTOR–VEHICLE OWNED OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS:
> (2) INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER ANOTHER POLICY ISSUED BY US.

*Jenkins v. State Farm Mut. Auto. Ins. Co.*, 219 W.Va. 190, 632 S.E.2d 346, 349 (S.Ct.2006). It seems reasonable to this court that, in the interest of making the meaning of its anti-stacking clauses less susceptible to ambiguity challenges, State Farm would, as a matter of

---

**1.** We note that the exclusionary clause analyzed in *Murray v. American Family Mutual Ins. Co.* 429 F.3d 757 (8th Cir.2005) contains language that is more clarifying than that contained in the State Farm policies before us: *"Two or More Cars Insured.* The total limit of our liability under all policies issued to you by us shall not exceed the highest limit under any one policy." *Id.* at 759. Interestingly, as aptly pointed out by Insured in his reply brief, the following anti-stacking language State Farm employs in its West Virginia policies also more clearly informs lay customers who purchase multiple policies that there can be no stacking of underinsured coverage on policies issued by State Farm:

1. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED OR LEASED BY *YOU, YOUR SPOUSE,* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY[.]

State Farm urges that, due to this anti-stacking language, only the policy listing the motorcycle on its declaration page would provide underinsured motor vehicle coverage for Insured when he was injured while driving his motorcycle. According to State Farm's interpretation of the clause, the other policies held by Insured would not provide underinsured motorist coverage for Insured's injuries because he was injured driving a vehicle he owned but did not have listed as the insured vehicle under those policies. Thus, State Farm maintains Insured is entitled only to the $100,000 he already has received, as the limit of underinsured motorist coverage available under the policy listing the motorcycle.

Insured argues that the "owned but not insured" clause actually serves only to restrict coverage when an injured insured is operating or occupying an owned vehicle that does not have underinsured motorist coverage, but does not prohibit stacking when the insured operates an owned vehicle with underinsured coverage.

In *Hempen v. State Farm Mut. Auto. Ins.,* 687 S.W.2d 894, 895 (Mo. banc 1985), the Missouri Supreme Court addressed the rule of law that a policy may clearly and explicitly spell out an intention to limit liability to a single coverage and thus foreclose stacking of medical payments coverage. The insured in *Hempen* was injured while riding in a 1967 Chevrolet she owned jointly with her husband. *Id.* at 894. She sought to stack the medical payments coverage of the 1967 Chevrolet with the medical payments coverage of a separate policy of a 1969 Volkswagen she owned. *Id.* The liability section in each of the *Hempen* policies provided:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

a. *bodily injury* to others, and

b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*[.]

The definition page of the policy defined "your car" as "the vehicle described on the Declarations page." *Id.* The declarations page of the Chevrolet policy listed only the 1967 Chevrolet, and the declarations page of the Volkswagen policy listed only the 1969 Volkswagen. *Id.* The medical payments section of both policies provided:

THERE IS NO MEDICAL COVERAGE:

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY:*

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU, YOUR SPOUSE,* OR ANY *RELATIVE,* WHICH IS NOT INSURED UNDER THIS COVERAGE[.]

*Id.* at 895–96 (italics in original).

The court found that this portion of the medical payments section of the Volks-

course, employ the most clarifying language available, regardless of jurisdiction. When questioned during oral argument as to why State Farm would not use in all its policies the more precise, clear language it drafted for its West Virginia insureds, State Farm responded that it could not answer the question because the differences in form samples might be related to requirements of state regulators. It would behoove State Farm to employ the greatest possible clarity in the language of its policy regardless of the jurisdiction in which it issues its policies.

wagen policy "clearly expresses the intention to limit coverage to injuries caused by the insured vehicle or vehicles[.]" *Id.* at 895. It concluded that "[b]ecause the Volkswagen was not involved in the accident, plaintiff is entitled to no medical coverage under this policy." *Id.*

Likewise, we conclude the State Farm coverage clauses in Insured's policies do not permit those five policies which do not list on their declaration pages the motorcycle Insured was riding when he was injured to cover bodily injury Insured sustained while riding the motorcycle.

■ Our analysis, however, does not end with this conclusion. Insured also points to the following clause, contained in all six policies, and contends that the clause actually sanctions stacking:

**If There is other Underinsured Motor Vehicle Coverage**

2. If the *insured* sustains bodily injury while *occupying your car* and *your car* is described on the declarations page of another policy providing underinsured motor vehicle coverage:

a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all such underinsured motor vehicle coverage applicable to the accident.

Significantly, the term "your car" is defined in the policy as "the **car** or the vehicle described on the declarations page" of the policy. Accordingly, this clause applies only in a situation where the insured sustains bodily injury while occupying a car or vehicle listed on both the declara-

tions page of the policy under consideration and also on the declarations page of another policy.

Here, no vehicle listed on one policy is listed on the declarations page of another policy. Specifically, Insured was injured while riding the motorcycle, and the motorcycle is not described on the declaration pages of any of the other five policies. Consequently, the motorcycle does not fall within the definition of "your car" in the other five policies because it is not listed on the declaration page of any of those policies; therefore, this other coverage clause does not grant coverage for bodily injury sustained by Insured while riding the motorcycle. Point denied.

*Conclusion*

The judgment of the trial court is affirmed.

ROY L. RICHTER, P.J. and KATHIANNE KNAUP CRANE, J. concur.